If it pleases the court, Lisa Gygax for Northbay Wellness Group. My client is present. I would like to reserve five minutes for rebuttal. Okay. Keep track of your time and I'll try to help. I'll try to do so. I appreciate the clock. What I wanted to start with this morning is what's happened since briefing because a lot of time passes. And the issues in this case, which always get focused on, are marijuana, medical marijuana, and now we have legal marijuana in the country in states, and states versus federal law. So what's happened is that there is, at the time of the jury trial, and even the time that all these things happened, there was just a handful of states because California started in 1996 with the Compassionate Use Act. Since the trial that was in 2004, because this all began with the bar complaint in 2006, since that jury trial, we've gone from a handful of states to 23, which shows that this federal-state conflict is growing. It's not receding. And oddly, until last month, it didn't even look like there was a direction of possible resolution. Last month... Counsel, I don't want to cut you short on this, but we have to decide this case based upon the time framework that it exists in, right? We're not going to be able to take into account what has happened since that time, right? Well, I was actually going to ask if we might brief it because of such a radical change in the law. But isn't your position that it doesn't matter anyway? The unclean hands shouldn't apply anyway, even as of the time. So I'm not sure why you need to talk about other states and what's happened since. The reason I think it's relevant is that the whole idea of the Tenth Amendment and states' rights is that's the crucible where new things emerge. And amazing things have emerged in this country. You know, Obamacare started as Romneycare in Massachusetts. Well, let's focus on the abuse of discretion review, right? We're not sitting here reviewing de novo. We're sitting here reviewing the decision for abuse of discretion. And the trial court in this case sat and made a call. The city has an equity court, frankly, with regard to the doctrine of unclean hands. And the trial judge indicated that he very carefully weighed the relative misconduct of the parties involved, and he weighed it in favor of Mr. Berry's in this case. So how is that an abuse of discretion? Well, it's abuse of discretion because we're not we weren't actually allowed to present our evidence. Early in the case, the judge said from the bench that he didn't care about the dishonesty of the debtor, and he cut off all the factors that we wanted to argue in equity. Because if these people have unclean hands because they hired a lawyer, the fact that he cheated them, he led them astray, he starts a corporation by forging their signatures, and then he takes their trust fund ought to be an unclean body to totality. But we're we don't get to present those things. The court says early on, I don't care. He says, I will not be bogged down. Well, with the evidence that we have, I think it's fairly clear that both parties have unclean hands in this case, right? As the trial court said, they were in partie delicto, and the funds that plaintiffs gave to Berry's were the actual proceeds of illegal drug sales. So in other words, setting aside the evidentiary rulings for a moment, we have certain facts that were presented before the trial court in this matter, and the court weighed those facts. On the one hand, you've got a corporation and its principal earning $5 million, $6 million a year, passing envelopes of cash to a lawyer who was clearly corrupt, and he was paid $5,000 a year, and he took $25,000 of the funds and he converted it. So the court said, well, here you're a corporation, you're making millions off of the trafficking of drugs that would be illegal under Federal law, and then you've got a lawyer who's corrupt on the other hand, so I think both of you have unclean hands, and he weighed the various factors and weighed it in favor of the Mr. Berry's, the debtor in this case. So how is that an abuse of discretion? What factors did he weigh erroneously in this case? The standard is a mixed fact in law, is what we're arguing is the standard. And Mr. Berry's got $5,000 a month, and he got those in checks, but he demanded the trust fund be $25,000 cash. Those are very important fact differences. And as far as North Bay Wellness Group's revenue, they may have generated $5.25 million in revenue because medical marijuana is almost $4,000 a pound. They made no profits. They actually filed 920s that are in the record. They actually lost money, so they didn't make a lot. They were following California's rules regarding dispensaries, which the Federal government just legalized last month, saying that they will keep their hands off in the omnibus budget at page 213. So what's interesting is that the whole issue of marijuana has lost with the real point of this case. Sotomayor's involved in North Bay, in the business itself. So should the Court have said both parties were involved in selling marijuana, whether that's illegal or not, under State or Federal law, it was illegal. So they were both involved in illegally selling marijuana. Berry's was also involved in stealing this fund. Is that what the weighing should have been? It seems like you were maybe accepting the premise that Berry's wasn't involved in the drug part. Berry's put himself on the board after taking the case, saying, I can make you a 501c3 Federal tax-exempt corporation, told them that they were, kept records because he said the chairman of the board keeps records. He put himself on the board. He told them that this is what was going on. He actually didn't file anything. He was on retainer to the company, essentially, right? He's on retainer, and he put himself on the board to run it. But the truth is, he didn't file any corporate papers until after they were open, and he forged their signatures to file them. He filed a for-profit corporation, not the 501c3 he promised to. But the real issue is he was hired. But was he involved in running the company and the operation as a member of the board? Only as a matter of the board, yes, he was. But realize, he was hired. The most important question that I think I missed in the briefing, and we've all missed, and you both hit on it, is what's the threshold question? What is the bad act that makes their hands unclean, that they want to follow California's Compassionate Youth Act, and they hired a lawyer? And all this punishment is for hiring the lawyer, because the lawyer didn't say, you can't do this. I don't care what California says. O'Connell. Well, it seems like the bankruptcy court thought that it was for violating Federal law. But I guess what I'm struggling with is whether the court needed to balance the unclean hands and whether Beres should have had more in the balance maybe than the court thought. That is exactly what I argue in my reply brief. And there's a case that talks about that when you're going to do equity on the unclean hands doctrine, you have to weigh both sides. We were denied our side. He wouldn't let us put the evidence in. He wouldn't. He wouldn't let us. But you had to do it, but even aside from these evidentiary rulings, we have to give a lot of deference to the evidentiary rulings. But even in what you were able to put in, there's evidence in the record that Beres was involved in the illegal drug trade part of this and in stealing the money, right? He definitely put himself in charge of day-to-day operations as far as a board member and directing them on every legal issue, including how to set up the trust fund, which was cash. He did everything. But what he didn't do was be a lawyer, which was what they hired him for. They hired him for it, to form a corporation if it was possible and to give him tax advice about whether it was taxable under California State BOE. He lied about the corporation. He forged our signatures. And he got it wrong on the law. It was taxable. And that's why he got a judgment for the money that he owed, because he didn't perform the services there. Right. So there's an $800,000 tax bill for the State. And what we're saying is, okay, if you want to say it's unclean and they don't get to have this money from discharge, my clients have never argued that. What they say is that a lawyer under the Sixth Amendment still has a duty to loyalty, honesty, and competency, and he was none. And to uphold a legal system, we have to have a basis where the lawyers are held to at least a slight standard higher than the client who's following their advice. I can only actually find one case, and it's on appeal, so I couldn't use it for any use here. Kagan. Well, I mean, sure, some judges may agree with you. Some judges may not, in balancing the facts in this particular case. That's why the standard review matters so much. Some judges may very well look at it and say, look, you've got a lawyer who's held to a high standard, who's essentially ripping off his client to the tune of $25,000, and didn't do all of these other things that you'd expect it to do. And then on the other hand, you've got somebody who set up a drug sale organization that's, albeit legal under State law, isn't under Federal law, so I think the lawyer's conduct was much worse. So I'm not going to apply the unclean hands doctrine in that instance. That's your argument. And I think some judges might weigh it that way. This particular judge didn't, and so the question is, is this judge's exercise of discretion so beyond the pale of reasonable justification? I have a hard time with that in light of the standard review. It costs the conscience that the judge's reaction early in the case is I will not hear about his dishonesty. I will not hear that he's still involved in other medical marijuana operations. I will not hear that he hides six different corporations and assets from his petition and committed perjury. It doesn't matter to me how much perjury he commits. I'm mad at them because they hired him to work through the State's medical marijuana law. I believe the real threshold issue is that the right of counsel is absolute, and that no client who hires a counsel and follows their advice under the State can be held to a tougher standard than the lawyer, especially when the Federal government has another remedy they exercise all the time, which is the Court could have said he's wrong, client is wrong, but discharge shouldn't be granted. We only let honest debtors use bankruptcy, not dishonest, corrupt lawyers who make all lawyers look horrible and the system look corrupt, but we're not letting the medical marijuana people have this either, because under Federal law, the Supremacy Clause, and up until last month, the dispensaries were illegal federally. You know, the budget changed that with the Henshaw-Rawbucker Amendment. Now it's okay. It took a while. So we could do forfeiture and tell the trustee that as soon as we don't grant forfeiture, the trustee will forfeit that to go to the other debtors. The result is wrong to say that anyone can lie to get through bankruptcy court with his high knowledge and then get discharged for stealing a trust from his clients. This could never happen in reverse. This can only happen from lawyers, because these people didn't know what they were doing. Here's a five-in-one. This is all California's regular law. If a client goes to read this to hire a lawyer so they can ask questions, they will never learn about the doctrine of unclean hands. They will never even learn about defalcation. That's a tough one for, you know, you have to be in federal court for that. So they trusted him absolutely. Did they trust him blindly? Actually, they eventually fired him, and it took them seven months to get their records back, and they were incomplete, and they discovered forgery, and they had shut down by then, because it was so bad. But the real question is, the integrity of the courts and the integrity of the Sixth Amendment is making an immunity for lawyers and fair hunting against clients. And that's what's really interesting, is California's Supreme Court just recognized that in the Solis v. Southern California case. Kennedy, I hate to interrupt your flow, but you wanted to save five minutes and we've got the rest of the briefing. I'll just say this and shut up. Go ahead. Keep going. I just want you to know the time is passing. The Solis case that they just did, which is so important, August 11th of 2014, it was a labor case where they discovered after the employer didn't pay their workers a whole lot of money, because they were Latino, that later on there was an error in social security number, and so the employer went and said, unclean hands, I would have fired them for this error. And California court says, no, we're not going to create a class of worker that employers have an inherent advantage over, because it'll never happen the other way around. And what we're making here is an immunity for corrupt lawyers that harms our judicial system. It harms the Sixth Amendment right to counsel that's absolute. It rewards hunting for clients that have conflicts between feds straight, and that's a lot of people. That's undocumented workers. That's people who might be trying to get out of prostitution. That's people with California driver's licenses that aren't recognized federally, who might have a car accident. That's a lot. That's why we think the threshold issue is that they just hired counsel, and that's not unclean. That's normal. Thank you. We'll hear from the other side. May it please the court, John Chandler, Santa Rosa, California, on behalf of the appellee, Kenneth Byres. The Bankruptcy Court and the District Court of Appeals do not err in its application of the Unclean Hands Doctrine. The Unclean Hands Doctrine is one of standing. It is a well-established doctrine within the law, and in the application of this case, there must be an immediate and necessary relationship between the relief sought and the underlying unlawful conduct. It is well-established in the record that North Bay Wellness Group is a medical marijuana dispensary. Counsel, let's cut to the chase, though. I mean, the reality is your client's a lawyer. He was hired to do legal work, and according to the allegations, stole $25,000. In bankruptcy, it's pretty unusual when someone with that degree of responsibility would be charged with a discharge on something that he stole. Why should Unclean Hands have anything to do with this? There are protections within the Bankruptcy Code in all chapters, Chapter 7, Chapter 11, 12, 13, et cetera, with bad faith filings. The issue before this Court is not the conduct of Mr. Byres. It's the 523 issue. If we're talking about Unclean Hands, the conduct of the parties is everything. That's what it's all about, isn't it? I mean, really, what else are we talking about? This Court in Recruit USA spoke about Unclean Hands, and it — Counsel, I don't think I heard your answer. Isn't that what we're talking about? What we're talking about — I understand what you're getting after is the balance of equities. Right. It's a balance of equities which deals with the individual conduct involved here. So if you're going to balance the equities, and if your client has a fiduciary duty to the client and steals some money — I don't think the other side has been charged with stealing money. They've been, you know, they were running what at that time was an illegal operation for purposes of certainly federal law. But your client was accused of stealing money. How does the Unclean Hands doctrine protect him? The balancing of equities shouldn't be applied in this case. Why not? Because the Unclean Hands doctrine is a standing doctrine. This adversary proceeding was brought by North Bay Wellness Group. It's a standing doctrine? It is a — You're saying we don't have jurisdiction to hear this? That's not what I'm saying. What I'm saying is the trial court and the district court of appeals affirmed this decision because North Bay Wellness did not have standing to assert their claim of non-discharge. Wait. They got the discharge — sorry. They got the judgment saying that the lawyer actually owed this money. There was no — Yes. I think there was a standing problem, but those courts didn't think that. And so then now you're saying they didn't have standing to object to the bankruptcy proceeding? Is that what you're saying? It's a standing question? Well, the Unclean Hands doctrine at its core is a standing doctrine. But — well, even if it is a standing doctrine, it involves a balancing, right? What the Unclean Hands doctrine tells us to do is do a balancing, even if we then call it a standing question. I agree. So we have to do a balancing of the parties' conduct. And as a — I agree. As the Court noted when opposing counsel made her argument, the trial court did balance these equities, and the standard before the court is abuse of discretion. There's ample evidence within the record to justify how that court determined those equitable sides to the argument. On one hand, the State court judgment found Baires liable for various conduct that he committed or took part in. Let's take this. If you look at this as Mr. Baires — how do you say it, Baires, Baires? It's Baires, I believe. Mr. Baires was involved in medical marijuana. The company was involved in medical marijuana. So they're equal on that. But the company didn't steal $25,000 from him, did it? No. So the balance is pretty clear, isn't it? I don't think it's as simple as that. How else are we supposed to look at it? How do we balance this? If they both have Unclean Hands in the sense they were dealing with, at that time, unlawful distribution of marijuana, then what's the distinction? The distinction is that your client stole, according to the lower court's finding, stole $25,000. There's no question it's owed. The question is whether there should be dischargeability in bankruptcy, right? I understand the point, Your Honor. What's the answer? The answer is there is remedies within the code that if Mr. Baires is seeking bankruptcy protection for the sole purpose of this criminal conduct, it would be a bad faith filing. Those actions were never argued, were nor filed. What sort of management responsibilities does he have in running the business? He sat on the board. Is that just a board member and name only, or did he have active management responsibilities that he shared in the profits? My understanding was, you know, his board activity and his, I guess, role as a counsel for the corporation was his only activity with the company, but I may be mistaken. But that's my understanding. He was on retainer for $5,000 a year, right? Right? Yeah. Or $5,000 a month. I believe. Yeah. I believe so. Do you dispute that there were no profits from this entity? What was that? So opposing your opposing counsel said that North Bay was not actually making any profit. Do you dispute that? I think there, you know, they did make large sums of money in 2005 and 2006. There were some tax issues associated with that. But at the end of the day, those sales were conducted by the corporation. Their liability emanates from those sales. Whether or not they made a profit, I think that's, I think on the face of the record, I would say, yes, they did make profit. The bankruptcy court made certain filings about the way the money was conducted. Is this supported by the evidence in the record? That it's very unseemly for the court to be asked to grant relief to a plaintiff who claims it lost cash from illegal drug sales by shoving it into envelopes, delivering it to its attorney, uncounted and undocumented. This is hardly the behavior of a legitimate business. Is that true, that there was no accounting of the money that was handed to the lawyer? There is no evidence on the record that I'm aware of that establishes the sequence of payments. All that was established on the record is that it was cash payments, sporadic payments, and I think the jury obviously came to the conclusion that it totaled $25,000. They were cash payments in envelopes. I think that is the only evidence in the record to establish that it's a $25,000 conversion award awarded. You're not disputing that amount, right? Isn't the only issue before us is the dischargeability issue? That's correct, under 523. And if we agree with you here, then if there's someone engaged in insider trading who makes a lot of money from insider trading, hires a lawyer with the money from the insider trading, and the lawyer takes a million dollars, runs off with it, that person proves the lawyer did this and gets a judgment, are you saying that that person can't try to stop the lawyer from getting a discharge in bankruptcy? It won't just apply to every kind of potentially illegal activity where someone I understand your point, Your Honor, of the slippery slope potential. However, as I stated earlier when I came up to the podium, was that there are protections within the Bankruptcy Code, bad faith. It's peppered throughout the Code, and it's applicable to each and every chapter. If that were the case, and the opposing party had proof of that intent, there would The State court found that he stole this money, right? I mean, that's the judgment from the State court, is he stole these $25,000. That's correct, but the Code is construed in such a way that State court judgments are dischargeable under the Bankruptcy Code. Now ---- Counsel, with respect, I think you're just dancing around this thing. I'm sure you're a fine lawyer, but aren't we really missing the point here? I mean, all of us have asked you basically the same question. Your client stole $25,000. There's no dispute about that. The question is, is that dischargeable in bankruptcy? You keep talking about the Code is peppered with this and so on. A nice phrase, but what does that mean? The Code does not say if you're a crook, you can get a discharge in bankruptcy. It doesn't say that. What we're talking now is whether there is some special aspect of the Bankruptcy Code that's going to permit your client, because it's poor client, his poor client, had the hiring and it was in the medical marijuana business, that it's out of luck. How can that make any sense? I mean, it doesn't make any sense at all. The State Bar comes down on people all the time that steal clients' money. I know of no case that has allowed an attorney who steals money from his client to have a discharge in bankruptcy. I mean, have you got any cases that suggest that someone who steals that much money from a client can get a discharge? Yes. I think what ultimately the Court is focusing on is the balance of equities. If we can all can agree. What's the case? The case is the Kendall-Jackson Winery case. It's a appellate case, 1999, and the Court noted that the Bankruptcy Court is one of equity, and the unclean hands doctrine stands for the principle that a guilty plaintiff does not deserve the equitable balancing that the opposing counsel is encouraging the Court to do. Again, there is a Ninth Circuit case, Recruit U.S.A., where it says the unclean hands doctrine closes the doors of the Court to one who is tainted relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. Isn't that what we're all talking about? So you're saying that if somebody runs a nail salon and they don't have a city permit and the lawyer comes in and steals all their money, that that lawyer can get a discharge ability in bankruptcy because the nail salon didn't have a city license? Is that what you're saying? Ridiculous. No, I'm not saying that. There is a balance of equities, and again, the standard of review is abuse of discretion. The trial court weighed these equities. There is ample evidence within the record to justify their position. We're a court of appeal, and we get to review what the trial court does. We're trying to wrestle with how the trial court got to where it did, and I'm trying to get some case law help. I think the case that you cite, it doesn't help you at the slightest. It's just general language, but it doesn't involve these facts, does it? Or anything like it? I don't believe that they're exactly in line. It doesn't involve lawyers stealing clients' money, does it? No, it does not. However, you know, there is potential. It is conceivable down the road that, you know, there may be some State bar hearings initiated that might impact Mr. Byrie's license to practice law. I would hope so. However, that is not the issue before the Court today. The issue before the Court is 523 and the dischargeability of the conversion judgment from the State court. The unclean hands doctrine is applicable given the fact that they're involved in a Schedule I, with a Schedule I drug under the Controlled Substances Act. The Supremacy Clause dictates the Federal laws of the Supreme Court of the land. And, yeah, a lot has happened. I don't think anybody's arguing that at that time they were violating Federal law. No, we're well past that. The question is, given that fact, how does your client get away with stealing $25,000 and having it be discharged, right? And your client was also violating Federal law by participating in this company by being on its board, right? Whether or not he had an active role to warrant being liable for, you know, being associated with that type of business, that's up for debate. And, again, I haven't briefed it. I'm not aware of the law on that subject. But I do recognize your point, Your Honor. I thought the trial court found that that's what he was involved in. That's what he did, right? The state court did. And for our purposes, we take that as true, right? On both sides. On both sides. We respect the jury's findings. However, the Bankruptcy Code is very clear that State court judgments are dischargeable under 523 or 727. 727 was never pled. It was brought up at trial. It wasn't on the complaint nor on the First Amendment complaint. This is a 523 issue. And the balancing of equities was done at the trial level, as I've already stated. All right. Well, we appreciate your argument, counsel. We'll hear a rebuttal from counsel for North Bay. Thank you, Your Honor. I would like to agree with counsel on something. When you look at the case law that the bankruptcy judge put in his memorandum, they all talk about standing, that there's no standing to come to the court. The court did not want to look at the equities of which wrong was greater or when someone comes to the court and they've done something wrong, they don't deserve a remedy. My argument here is that there's no way that the client succeeded the wrongs of Berese. He should have told him not to do it. That would have been good counsel if he really felt these ways that he later uses. Counsel, I characterized it earlier as you've got, at that time, the law said that medical marijuana was illegal, both on your client's part and on the part of the lawyer. The distinction is that the lawyer stole $25,000, and that's what we balance. Is that correct? I want to go back further in the big picture. The distinction is he got hired as counsel and chose to get involved in the business. They had no idea that counsel shouldn't be sitting on a board without a conflicts waiver and a proper consent. We really need to get into that, though. But it is the issue that they hired a lawyer and they trusted him. And everything is nebulous. It's changing all the time. You don't want to hear all the new stuff, but it's now even legal federally. You might want to do a law review on it. I'm sure. But let's talk about his duties for a moment, because you did touch on that during his opposition. We're almost out of time. Right. Please look at his answer from state court, E620. He claims to be their partner. He claims those are profits from his work. He doesn't just claim to be their lawyer. Amazing affirmative defenses. Also, federal unclean hands was there. Okay. Thank you. Thank you both for argument in an unusual, fortunately, case. The case just argued is submitted, and the court stands in recess for the day.
judges: Smith, Nguyen, Friedland